948 P.2d 166

**In the Interest of John Doe, a child under eighteen years of age.**

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**John DOE, a child under eighteen years of age, Defendant–Appellant.**

No. 22797

Court of Appeals of Idaho.

July 17, 1997

Review Denied Dec. 24, 1997.

Alan E. Trimming, Ada County Public Defender; Erik J. Glatte, Deputy Public Defender (argued), Boise, for Defendant–Appellant.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General (argued), Boise, for Plaintiff–Respondent.

LANSING, Judge.

This case involves the admissibility of incriminating statements made by a ten-year-old boy, John Doe, while he was being questioned by a police officer at the boy's elementary school. The issue we address is whether the child's statements to the officer should be suppressed because they were made during a custodial interrogation without *Miranda* warnings. We hold that suppression is required.

### FACTS AND PROCEDURAL BACKGROUND

In the fall of 1994, John Doe was a fifth grade student at Jackson Elementary School in Boise. A detective in the Boise Police Department was assigned to Jackson Elementary School as a School Resource Officer (SRO). The SRO had authority to speak to students during school hours concerning delinquent behavior occurring at school or in the community. Doe had behavioral prob-

lems at school during the semester, and both the principal and the SRO had previous disciplinary interaction with him on a number of occasions. On September 26, 1994, Doe's mother contacted the SRO to advise him about allegations that her son had sexually molested a younger girl. The SRO was assigned to investigate the case and, on October 21, 1994, made arrangements for Doe to be brought to him for an interview. Doe was removed from his class and escorted to the meeting by a member of the school staff. The interview occurred in a faculty room at the school with only the SRO and Doe present. The SRO was not in uniform, but his police badge was visible on his belt and Doe knew him to be a police officer. The SRO told Doe about the purpose of the interview and told him that he was not being arrested. The SRO did not advise Doe of his *Miranda* rights. After Doe admitted that he had sexually touched the victim, the SRO told Doe that he was free to leave and return to class. Doe was not asked to make a written statement, nor was the interview recorded. The SRO told Doe that a police report would be filed, and a petition was subsequently filed under the Youth Rehabilitation Act (Y.R.A.), charging Doe with lewd and lascivious conduct with a minor, I.C. § 18–1508.

The magistrate granted a motion to suppress Doe's confession, concluding that it was given involuntarily. The State appealed the magistrate's determination to the district court where the suppression order was reversed.

On further appeal to this Court, Doe asserts that (1) neither the district court nor this Court has authority to hear the State's appeal from the magistrate's decision because the suppression order is not appealable; (2) Doe was in custody at the time of his conversation with the police officer and therefore the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should have been given; and (3) even if Doe was not in custody and *Miranda* is therefore inapplicable, Doe's confession was given involuntarily.

1. At the time of the proceedings before the magistrate in this case, the Youth Rehabilitation Act was codified at I.C. §§ 16–1801 through 16–1845. Effective October 1, 1995, the Act was

## ANALYSIS

### A. I.C. § 16–1819 Did Not Preclude the State's Appeal of the Magistrate's Suppression Order.

■ We address first Doe's contention that the magistrate's suppression order was not appealable. After the oral argument on appeal to the district court, Doe filed a motion to dismiss, contending that the State's appeal was not authorized under then-existing Idaho Code § 16–1819,[1] which provided in part:

> All orders and final judgments made by any court in matters affecting a child within the purview of this act may be appealed by the child. *A decision by the court pursuant to section 16–1806, Idaho Code, not to waive jurisdiction under the youth rehabilitation act over the child may be appealed by the state.* Appeals shall be reviewed as provided by the appellate rules of the supreme court of Idaho, except no undertaking shall be required. (Emphasis added.)

Seizing upon the language emphasized above, Doe argues that the State may appeal only from a decision not to waive jurisdiction under the Y.R.A. We believe such a reading of the statute to be too restrictive. As the district court explained:

> The statute specifically gives the State the right to pursue an appeal of an order which would not otherwise be appealable. Nothing within the language of the statute suggests that by granting the State the right to appeal the denial of a waiver, the legislature intended to preclude any other appeal by the state.

Proceedings under the Y.R.A. are governed by the Idaho Juvenile Rules. Those rules do not expressly state in what circumstances an appeal is permitted. However, I.J.R. 28, in effect in 1994, provided that "The Idaho Rules of Civil Procedure shall apply to Y.R.A. proceedings to the extent

amended and redesignated. Virtually the same provisions that appeared in I.C. § 16–1819 are now codified as I.C. § 20–528.

that they are not inconsistent with these rules, statutes or the law."[2] Thus, Idaho Rule of Civil Procedure 83(a), which addresses the right of appeal from the magistrate division to the district court, must be consulted. That rule provides in part:

An appeal must first be taken to the district judges division of the district court from any of the following judgments, orders or decisions rendered by a magistrate: ...

(2) Any of the orders, judgments or decrees in an action in the magistrate's division which would be appealable from the district court to the Supreme Court under Rule 11 of the Idaho Appellate Rules.

Idaho Appellate Rule 11, referenced in I.R.C.P. 83(a), authorizes appeals from orders granting a motion to suppress evidence in criminal cases. I.A.R. 11(c)(7). Although Y.R.A. proceedings are not criminal actions, they are quasi-criminal in many aspects, and particularly so in regard to the suppression of evidence. Therefore, we conclude that the right to appeal from an order granting a motion to suppress evidence, conferred upon the State by I.A.R. 11(c)(7), was made applicable to Y.R.A. proceedings by former I.J.R. 28 and I.R.C.P. 83(a). It follows that the district court correctly denied Doe's motion to dismiss the appeal.

## B. Doe Was in Custody for the Purposes of *Miranda v. Arizona*

█ In reviewing an intermediate appellate decision of the district court, we examine the record before the magistrate. Although we consult the district court's decision for the insight it may provide, it is the magistrate's decision, and the record upon which it was based, that is the focus of our review. *State v. Carr*, 128 Idaho 181, 183, 911 P.2d 774, 776 (Ct.App.1995); *State v. Hardman*, 120 Idaho 667, 668, 818 P.2d 782, 783 (Ct.App.1991). Our examination of the magistrate's suppression order is bifurcated. Where findings of fact are supported by substantial evidence, we will not disturb them; however, we independently determine whether the constitu-

tional requirements are satisfied in light of the facts found. *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App.1993).

We first address the State's contention that the magistrate failed to apply the proper legal standards in granting Doe's motion to suppress statements made to the SRO. The State asserts that there were essentially two questions to be decided: (1) was the child in custody for purpose of *Miranda, supra*, requiring that his statements be suppressed because of the absence of *Miranda* warnings; and (2) regardless of whether the interview was custodial or non-custodial, was there police coercion that overbore the will of the child so that his statements must be deemed involuntary? According to the State, the magistrate confused these two issues and did not distinguish the legal standards applicable to each in conducting his analysis.

█ The State is correct in its observation that the issue whether *Miranda* warnings had to be given prior to an interrogation and the issue whether a confession was voluntary are separate and distinct, stemming from different constitutional provisions. The requirement of *Miranda* warnings is based upon the Fifth Amendment privilege against self-incrimination. *Miranda*, 384 U.S. at 463–469, 86 S.Ct. at 1621–1625. It is operative whenever the person being interrogated actually is in custody or is subjected to a restraint on his liberty of a degree associated with a formal arrest. *New York v. Quarles*, 467 U.S. 649, 655, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984); *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). The doctrine disallowing the use of involuntary confessions, on the other hand, is grounded in the Due Process Clause of the Fourteenth Amendment, and it applies to any confession that was the product of police coercion, either physical or psychological, or that was otherwise obtained by methods offensive to due process. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *Oregon v. Elstad*, 470 U.S. 298, 304, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985); *Haynes v. Washington*, 373 U.S. 503,

**2.** Current Idaho Juvenile Rule 21, adopted in 1996, makes certain portions of the Idaho Crimi-

nal Rules applicable to juvenile actions.

514–515, 83 S.Ct. 1336, 1343–1344, 10 L.Ed.2d 513 (1963). As the State asserts, the magistrate here did not adequately differentiate his analyses of these two potential grounds for suppression.

In addition, in reaching his decision to suppress Doe's statements, the magistrate gave considerable weight to certain factors that did not merit such attention. These include the so-called "focus of the investigation" standard for evaluating whether a suspect was in custody. The magistrate held that when an investigation has focused upon a juvenile as a suspect, the police must advise the juvenile of his *Miranda* rights at the outset of the interrogation. This standard was rejected, however, in *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), where the United States Supreme Court explained that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 323, 114 S.Ct. at 1529. The Court went on to say that "a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question of whether the individual is in custody for purposes of *Miranda*." *Id.* at 324, 114 S.Ct. at 1529–30. Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. *Id.* at 324–326, 114 S.Ct. at 1530.

The magistrate also erred in holding that the presence or absence of an audio or video recording of the interrogation is a factor in determining the validity of the confession. The presence or absence of a recording does not make an otherwise proper interrogation improper, and the Idaho Supreme Court has rejected the rule, followed in some other jurisdictions, that in order to be admissible, statements made in custody must be recorded. *State v. Rhoades*, 121 Idaho 63, 73, 822 P.2d 960, 970 (1991). A trial court most certainly may consider the absence of a recording, when the interrogating officer conveniently could have made one, in evaluating the officer's credibility. Thus, the failure to record an interrogation may be a factor in assessing the accuracy and truthfulness of the officer's account of the event. However, once the trial court has made its findings of fact regarding the circumstances under which the confession was obtained, the absence of a recording is not a factor to be weighed in determining whether those circumstances violated due process standards and rendered the confession involuntary.

Although we conclude that the magistrate relied, in part, on incorrect legal standards in concluding that Doe's confession was involuntary, we must still determine whether the magistrate was ultimately correct in granting Doe's motion to suppress. Where a ruling is correct, though based upon an incorrect reason, we will uphold the decision if an alternative legal basis supports it. *Hanf v. Syringa Realty, Inc.*, 120 Idaho 364, 370, 816 P.2d 320–326 (1991); *State v. Hocker*, 119 Idaho 105, 106, 803 P.2d 1011, 1012 (Ct.App.1991); *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct.App.1984). Therefore, we will address Doe's assertion that he was effectively in custody when his inculpatory statements were obtained by the SRO and that the statements must be suppressed because no *Miranda* warnings were given.

In *Miranda*, the United States Supreme Court held that, in order to safeguard the Fifth Amendment privilege against compulsory self-incrimination, the police must inform individuals of certain rights before undertaking a custodial interrogation.[3] Statements elicited in violation of this rule may not be admitted for certain purposes at trial. *Miranda*, 384 U.S. at 479, 86 S.Ct. at

---

3. *Miranda* warnings inform an individual that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612.

1630; *Stansbury*, 511 U.S. at 320–322, 114 S.Ct. at 1528. However, the obligation to administer *Miranda* warnings arises only where there has been such a restriction on a person's freedom as to render him "in custody." *Id.; Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

To ascertain whether an individual was in custody, a court must consider all of the circumstances surrounding the interrogation, with the ultimate inquiry being "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520, *quoting Mathiason*, 429 U.S. at 495, 97 S.Ct. at 713–714. *See also State v. Birkla*, 126 Idaho 498, 501, 887 P.2d 43, 46 (Ct.App.1994); *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct.App.1992); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct.App.1990). This test is an objective one based on "all of the circumstances surrounding the interrogation." *Stansbury*, 511 U.S. at 322, 114 S.Ct. at 1529. The relevant inquiry is how a reasonable person in the suspect's position would have understood his situation. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–3152, 82 L.Ed.2d 317 (1984). As applied to adults, this inquiry focuses on such elements as the time and location of the interrogation, the conduct of the officers, the nature and manner of the questioning, and other persons present. *Medrano*, 123 Idaho at 118, 844 P.2d at 1368; William E. Ringel, SEARCHES AND SEIZURES ARREST AND CONFESSIONS §§ 27.3(a)-(c).

■ The circumstances in which a minor may be deemed to be in custody for purposes of *Miranda* is an issue that has not been previously addressed by the Idaho appellate courts. Nor have we found any case in which the United States Supreme Court determined whether a juvenile was in custody for *Miranda* purposes. It is clear, however, that where the related question of the voluntariness of a juvenile confession is at issue, the United States Supreme Court does not treat juveniles as if they were adults. For example, in *Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), the Court examined, in light of the Fourteenth Amendment's due process requirements, the validity of a confession of a fifteen-year-old defendant who had been questioned by the police in relay teams for five hours. The juvenile also had been denied access to his attorney and his mother for two days. In a plurality opinion, the Court stated:

> What transpired would make us pause for careful inquiry if a mature man were involved. And when as here, a mere child— an easy victim of the law—is before us, special care in scrutinizing the record must be used.... He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. This is a period of great instability which the crisis of adolescence produces. A 15–year old lad, questioned through the dead of night by relays of police, is a ready victim of the inquisition. Mature men possibly might stand the ordeal.... But we cannot believe that a lad of tender years is a match for police in such a contest. He needs counsel and support if he is not to become the victim first of fear, then of panic.

*Haley*, 332 U.S. at 599–600, 68 S.Ct. at 303–304.

Subsequently, in *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), the Supreme Court invalidated the confession of a fourteen-year-old as involuntary and made the following observation:

> The prosecution says that the boy was advised of his right to counsel, but that he did not ask either for a lawyer or for his parents. But a 14–year–old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police.... He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in

which he found himself. A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had.

*Gallegos,* 370 U.S. at 54, 82 S.Ct. at 1212–1213.

Four years later, in a case involving an in-court admission by a juvenile, the Court considered the Fifth Amendment safeguard against self-incrimination:

[T]he privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults.... If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright, ignorance or despair.

*In re Gault,* 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967).

More recently, in *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the Court applied the totality of the circumstances analysis to the voluntariness of a juvenile's waiver of his *Miranda* rights during custodial interrogation and concluded that the waiver had been given voluntarily. In so doing, the Court observed:

[The] totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he had the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Id.* at 725, 99 S.Ct. at 2571–2572.

It is thus apparent that in evaluating the voluntariness of a juvenile's confession, consideration must be given to the child's age, maturity, intelligence, education, experience with police and access to a parent or other supportive adult.

A number of jurisdictions have utilized similar factors in determining whether a child was "in custody" and therefore should have been given *Miranda* warnings prior to police questioning. In *State v. D.R.,* 84 Wash.App. 832, 930 P.2d 350 (1997), a fourteen-year-old boy was found to be in custody when he was interviewed by a police officer in the presence of the assistant principal and a school social worker. The interview took place in the assistant principal's office. The boy was told that he did not have to answer questions, but he was not otherwise given *Miranda* warnings. The officer indicated during the course of the questioning that he knew the boy had been engaging in sexual misconduct. The Washington Court of Appeals framed the inquiry as whether a fourteen-year-old in D.R.'s position would have "reasonably supposed his freedom of action was curtailed" and concluded that D.R. was in custody during his interview, "in light of [the officer's] failure to inform him he was free to leave, D.R.'s youth, the naturally coercive nature of the school and principal's office environment for children of his age, and the obviously accusative nature of the interrogation." *Id.* 930 P.2d at 353 (citations omitted).

In reaching this conclusion, the Washington Court relied upon the analysis outlined in two Oregon decisions, *State ex rel. Juvenile Dep't of Lane County v. Killitz,* 59 Or.App. 720, 651 P.2d 1382 (1982), and *State ex rel. Juvenile Dep't of Multnomah County v. Loredo,* 125 Or.App. 390, 865 P.2d 1312 (1993). In *Killitz,* a junior high student was interviewed by an armed police officer after having been summoned to the school principal's office and, during the course of that interview, confessed to an act of burglary. In

concluding that the student had been in custody during the interview, the court took note of the fact that the student, who would have been subject to the standard school disciplinary measures if he had not come to the office when told to do so, was never given the impression by either the officer or the principal that he was free to leave the office. As a result, the court concluded that the student did not come to the interview voluntarily and that the interrogation was custodial. *Id.* at 1384.

In *Loredo,* a thirteen-year-old student was summoned to appear at the principal's office where he was interviewed by an officer who immediately informed the child that he was not under arrest, that he could leave if he wanted to, and that he did not have to answer any of the officer's questions. *Loredo,* 865 P.2d at 1313–1314. In concluding that the student was not in custody for purposes of *Miranda* under these circumstances, the court made the following observations:

> Given that the school setting is more constraining than other environments, it is especially important that police interviews with children, when carried out in that setting, are conducted with due appreciation of the age and sophistication of the particular child. An interview that would not be "compelling" for an adult might nonetheless frighten a child into believing that he or she was required to answer an officer's questions. Accordingly, special precautions should be taken to ensure that children understand that they are not required to stay or answer questions asked of them by a police officer.

*Id.* at 1315.

The interrogation of a ten-year-old was at issue in *Matter of Chad L.,* 131 A.D.2d 760, 517 N.Y.S.2d 58, (N.Y.1987). There, two detectives interviewed the child in the bedroom of his residence, where the body of a murder victim had been discovered. The child was not advised that he could leave. The Court held that he was in custody for *Miranda* purposes because "a reasonable 10–year–old, innocent of any crime, would have believed that his freedom had been infringed upon in a significant way." *Id.* at 59.

Even in cases involving older children, who presumably have greater sophistication regarding interaction with police, courts have been concerned about the restrictive environment of the school setting and its impact on juvenile confessions obtained by police in that setting. For example, although a Florida court determined that a high school student was not in custody where the school principal asked questions with a police officer present, the court indicated that had the officer asked the questions, *Miranda* warnings would have been required. *Interest of J.C.,* 591 So.2d 315 (Fla.App.1991).

 We conclude that the objective test for determining whether an adult was in custody for purposes of *Miranda,* giving attention to such factors as the time and place of the interrogation, police conduct, and the content and style of the questioning, applies also to juvenile interrogations, but with additional elements that bear upon a child's perceptions and vulnerability, including the child's age, maturity and experience with law enforcement and the presence of a parent or other supportive adult. In applying this standard to the facts before us, we ask whether a ten-year-old in Doe's position would have reasonably considered his freedom of action to be curtailed in a significant way, i.e., to a degree associated with a formal arrest.

In this case, Doe received a mandatory directive to leave his fifth-grade class and report to the faculty room, where he had been disciplined previously by both the SRO and school officials. He was not informed by school officials or by the SRO that he could leave, that he did not have to answer the officer's questions or that he could terminate the questioning at any time. It was only after Doe had confessed that he was told that he could leave. No parent or other adult concerned with Doe's best interest was present during the questioning. Doe knew that the person interviewing him was a police officer, and the officer's badge was visible.

We think it unlikely that the environment of a principal's office or a faculty room is considered by most children to be a familiar or comfortable setting, for students normally report to these locations for disciplinary rea-

sons, as Doe had in the past. It is also unlikely that any ten-year-old would feel free to simply leave the administrative area of the school after having been summoned there by school authorities for a police interview. We are persuaded that under these circumstances a child ten years of age would have reasonably believed that his appearance at the designated room and his submission to the questioning was compulsory and that he was subject to restraint which, from such a child's perspective, was the effective equivalent of arrest. We hold that Doe was in custody for the purpose of *Miranda* and therefore could not properly be questioned without prior advisement of his rights.

Because Doe was not informed of his *Miranda* rights before being interrogated, we affirm the magistrate's order suppressing Doe's statements. The district court's decision on appeal is reversed and the case is remanded to the magistrate division.

WALTERS, C.J., and PERRY, J., concur.