# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51081

| | |
|---|---|
| In the Interest of: John Doe (2023-33), Juvenile Under Eighteen (18) Years of Age. | Filed: October 7, 2025 |
| ------------------------------------------------ | Melanie Gagnepain, Clerk |
| STATE OF IDAHO, | |
| Petitioner-Respondent, | |
| v. | |
| JOHN DOE (2023-33), | |
| Juvenile-Appellant. | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Cathleen MacGregor Irby, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming the order and decision regarding purview under the Juvenile Corrections Act, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Judge

John Doe appeals (2023-33) from the district court's decision, on intermediate appeal from the magistrate court, affirming the order and decision, finding that Doe was under the purview of the Juvenile Corrections Act (JCA). We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe, fifteen-years-old at the time, was accused of inappropriate sexual conduct by L.K., his thirteen-year-old half-sister. After L.K. participated in a CARES[1] interview, Ada County Detective, Jessica Johnson, contacted Doe's mother to schedule an interview with Doe. Doe's stepfather drove Doe to the sheriff's office for the interview. Notably, the magistrate court described Doe's relationship with his stepfather as "very strained" and also acknowledged the allegations of physical abuse Doe had made against his stepfather.

When Doe and his stepfather arrived at the sheriff's office, Detective Johnson escorted Doe and his stepfather to a "soft room." Detective Johnson later explained that the "soft room" is designed like a living room with a couch, a love seat, an ottoman, a lamp, and a television set. Unlike an interrogation room, a soft room cannot be locked from the outside. Just like other interview rooms, civilians cannot access the "soft room" without staff or law enforcement.

At the beginning of the interview, Doe's stepfather was present in the room. About a minute and a half into the interview, Detective Johnson told Doe: (1) he was not under arrest (2) the door to the room, although closed for privacy, was unlocked; (3) unless Doe murdered someone, he would be going home with his stepfather; and (4) everything Doe said would be included in the report that is available to the "prosecutors and judges." The detective then explained that, in the beginning of the conversation she would get to know Doe but later they would talk about "stuff that might be kind of embarrassing" and "things that [Doe would not] want [his] dad to really hear." Detective Johnson told Doe that the conversation would involve behavior that is not "correct." The detective reiterated that she knew what Doe did and the purpose of the conversation was to discover Doe's reasons for his inappropriate behavior and provide him with help.

Detective Johnson asked if Doe wanted his stepfather in the room. Doe responded that he did not, and the detective had Doe's stepfather escorted out of the soft room. At that time, the detective told Doe that he should notify her if he did not want to talk to her anymore or if he felt like he needed support so she could let Doe's stepfather back into the room.

---

[1]     Children at Risk Evaluation Service (CARES).

Detective Johnson's interview with Doe lasted approximately two hours beginning with casual conversation. The detective did not read Doe his *Miranda*[2] rights. During the interview, the detective indicated that she was aware that Doe acted inappropriately toward his sister, and the purpose of the interview was to help Doe address his actions. When Doe denied the allegations, Detective Johnson asserted that Doe was not being truthful. In response to Detective Johnson's warning that a polygraph examination would expose any dishonesty, Doe stated that he understood polygraph results were not admissible in court.

Detective Johnson did not explicitly inform Doe of his right to leave or to refuse to answer questions. However, she advised Doe that the door to the "soft room" (where the interview occurred) was closed for privacy but not locked. Immediately after Doe requested an attorney, the detective terminated the interview. Detective Johnson then left Doe alone in the room for approximately eighteen minutes, closing the door upon her exit. She later returned with Doe's stepfather. Before concluding the interview, Detective Johnson said that she was sorry Doe had not told her the truth about his conduct.

Ultimately, Doe was charged with two counts of lewd and lascivious conduct with a minor (Idaho Code § 18-1508). Doe filed a motion to suppress the statements he made during the interview because the detective failed to provide *Miranda* warnings to him. The magistrate court denied Doe's motion to suppress, concluding he was not in custody for purposes of *Miranda* and the statements he made were voluntary. After an evidentiary hearing, the magistrate court issued a written memorandum decision, finding Doe under the purview of the JCA. The magistrate court then set the matter for a disposition hearing. Doe filed a timely notice of an intermediate appeal to the district court. The district court concluded that the magistrate court erred in finding Doe guilty of count I and vacated the magistrate court's finding on count I. The district court affirmed the magistrate court's denial of Doe's motion to suppress and determined that Doe was within the purview of the JCA based on count II. Doe again appeals.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Doe argues that the district court erred by affirming the magistrate court's order denying Doe's motion to suppress statements he made during his interview with Detective Johnson because he was subjected to a custodial interrogation without *Miranda* warnings. Doe contends that, under the totality of the circumstances, a reasonable fifteen-year-old in Doe's position would not have believed that he was allowed to terminate the interview and leave.

The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court defines custody as a situation where a suspect's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *State v. Myers*, 118 Idaho 608, 611, 798 P.2d 453, 456 (Ct. App. 1990).

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered may include the degree of restraint on the person's freedom of movement (including

4

whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

When, as here, the suspect is a minor, and law enforcement is aware of this fact, courts apply this same standard but must also consider factors specific to juveniles such as the child's age, maturity, experience with law enforcement, and whether a parent or supportive adult was present. *J.D.B. v. North Carolina*, 564 U.S. 261, 274 (2011); *State v. Doe*, 130 Idaho 811, 818, 948 P.2d 166, 173 (Ct. App. 1997). However, no single factor is dispositive. *See State v. Godwin*, 164 Idaho 903, 916-17, 436 P.3d 1252, 1265-66 (2019). The ultimate question is whether a reasonable person in the minor's position would believe their freedom was significantly restricted. *See id.*; *Doe*, 130 Idaho at 818, 948 P.2d at 173. Both Doe and the State rely on various factors to support their respective positions. Accordingly, we examine these factors to determine whether Doe met his burden of proving he was in custody.

First, a juvenile's access to a parent or other supportive adult is a factor evaluated when determining the custodial status for *Miranda* purposes. *Doe*, 130 Idaho at 817, 948 P.2d at 172. Doe argues that, although his stepfather transported Doe to the sheriff's office and was present at the outset of the interview, the stepfather's alleged abusive history toward Doe rendered his stepfather unsupportive. The supportive adult factor is most relevant in situations in which a juvenile has demonstrated trouble understanding his or her predicament or law enforcement prevents a supportive adult from speaking with the juvenile. In this case, Detective Johnson did not prevent Doe from accessing his stepfather. The opposite is true. After Detective Johnson explained the purpose of the interview, she asked whether Doe wanted his stepfather to remain. Doe declined, stating he would not feel comfortable discussing the matter in his stepfather's presence. The stepfather then provided Detective Johnson with his phone number so she could contact him at any time. Detective Johnson assured Doe if he did not want to continue the

5

interview she would contact his stepfather. Shortly after Doe terminated the interview, and Detective Johnson contacted the stepfather, he returned to the sheriff's department. Nothing in the record indicates that Doe's access to his stepfather (or to another adult that Doe would have considered more supportive) was obstructed. In addition, Doe displayed a sophisticated understanding of the legal process; first, by noting that polygraph results are inadmissible in court and, later, by invoking his right to counsel to terminate the interview. Accordingly, we conclude that Doe had unimpeded access to his stepfather regardless of whether Doe chose to seek his advice based on their alleged strained relationship.

Second, the fact that questioning takes place in a police station does not necessarily mean that a party is in custody. *State v. Osborne*, 130 Idaho 365, 370, 941 P.2d 337, 342 (Ct. App. 1997). The interview took place at the Ada County Sheriff's Office in the "soft room" during its regular business hours. The "soft room" is one of five rooms designated for interviews and interrogations. All these rooms are equipped with video-recording systems. Most notably, the soft room, unlike the other interview rooms, cannot be locked from the outside. Detective Johnson took Doe and his stepfather to the soft room for the interview. Doe presented no evidence that there were barriers preventing him from leaving the soft room if he chose to do so. The remaining factors, including the time of day when the interview took place, the unlocked door to the interview room, the lack of security doors on the way to the soft room, and the environment in the interview room suggest that a reasonable person of Doe's age and under these circumstances would have felt free to terminate the encounter and leave the building, as Doe eventually did.

Third, a video recording of the interview shows it lasted approximately two hours. This factor is not determinative and depends on the surrounding factors. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (finding length of interview was a factor to consider when determining custodial interrogation); *see also Howes v. Fields*, 565 U.S. 499, 515-17 (2012) (finding of no custody even though the defendant was questioned for five to seven hours without *Miranda* warnings). In this case, the length of the interview does not weigh in favor of finding custody.

Fourth, there is no dispute that the only officer present throughout the entirety of Doe's interview was Detective Johnson. Although the detective was armed, she wore plain clothes and did not use her gun to intimidate Doe. The presence of a single, plain clothes officer during questioning does not weigh in favor of finding custody.

6

Fifth, Doe argues that the detective's questioning was accusatory and weighs heavily in favor of finding custodial interrogation. From the beginning of the interview, Detective Johnson stated that she knew what Doe did, that Doe's behavior was inappropriate, and the only reason she was meeting with Doe was to provide him with the "help" he needed. Shortly after Doe's stepfather left the soft room, the detective again stated that she knew what Doe did to L.K. Detective Johnson repeated this accusation several times in the span of a few minutes. Detective Johnson stated that she was very experienced and the information L.K. disclosed was very detailed, which indicated that L.K. was truthful. Nearly every question thereafter was accusatory. Detective Johnson informed Doe that his statements would be included in a report available for the prosecutor's review. The magistrate court made a clearly erroneous finding that, although Detective Johnson knew about inappropriate conduct between Doe and L.K. from the CARES interview, the detective "had no opinions as to [Doe's] involvement." Detective Johnson's interview of Doe was accusatory.

Lastly, in cases involving a juvenile, the juvenile suspect's age may be analyzed as part of the court's determination of whether a custodial interrogation occurred. *Doe*, 130 Idaho at 818, 948 P.2d at 173. The United States Supreme Court stated that "a child's age properly informs the *Miranda* custody analysis" since "a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go." *J.D.B.*, 564 U.S. at 272. Here, the district court described Doe as a fifteen-year-old of average or above-average intelligence. Despite his age, Doe had experience and knowledge of the justice system as evidenced by his statement that results of a polygraph test were not admissible in court proceedings. Doe appeared at ease during the interview with Detective Johnson. In fact, Doe was more comfortable talking to the detective alone rather than with his stepfather in the room. Notably, Doe did not just request to stop the interview, he instead requested an attorney.

Under the totality of the circumstances, a reasonable fifteen-year-old of Doe's maturity and in his position would have felt free to terminate the interview and leave. The district court did not err in affirming the magistrate court's order denying Doe's motion to suppress statements made during his interview based on the detective's failure to give *Miranda* warnings.

**IV.**

**CONCLUSION**

The district court correctly affirmed the magistrate court's order denying Doe's motion to suppress. Accordingly, the decision of the district court, on intermediate appeal from the magistrate court, affirming the order and decision regarding purview under the JCA is affirmed.

Judge LORELLO and Judge Pro Tem MELANSON, **CONCUR**.