IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41147

| STATE OF IDAHO, | ) | 2014 Opinion No. 67 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 22, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CONNOR G. SPIES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. David D. Manweiler, Magistrate.

Order of the district court reversing the magistrate's order granting motion to suppress, affirmed and case remanded to the magistrate court for further proceedings.

Alan E. Trimming, Ada County Public Defender; Nicholes G. Alexander, Deputy Public Defender, Boise for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

GRATTON, Judge

Connor G. Spies appeals from the district court's intermediate appellate decision that reversed the magistrate's order granting his motion to suppress evidence. We affirm the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from an officer's testimony at the motion to suppress hearing and from two aerial photographs placed in evidence by Spies, which are images taken from Google Maps. At 1:00 a.m., the officer observed Spies traveling on West Ustick Road in Meridian. That section of road had recently undergone construction and temporary raised tabs were installed to distinguish the two lanes of opposing travel. Immediately after an intersection

1

with 12th Drive, as West Ustick Road runs along a subdivision, the roadway juts out to accommodate another eastbound lane. The lane continues for only a short distance and Spies entered this lane without signaling. The officer then observed Spies swerve back into the left-hand lane, without signaling, as the lanes joined back into one lane. Continuing down West Ustick Road along the subdivision, the eastbound lane again juts out to the right at North Blairmore Way. The newly-formed lane begins before North Blairmore Way and ends shortly after. Spies again failed to signal as he entered the right-hand lane. He also swerved "pretty violently" back as the road narrowed, again without signaling, to avoid driving off the road due to the lane coming to an abrupt end. Throughout the officer's testimony, he refers to the two right-hand lanes as "turn lanes." However, the officer clarified that one of the lanes was more of a "merge lane" meant to allow traffic leaving the subdivision to gain speed and merge into the main lane of travel on West Ustick Road.

The officer also testified that based on his training and experience, people begin to leave bars at late hours and that intoxicated drivers attempt to stay as close to the right side of the road as possible to avoid crossing the centerline. The officer described Spies' driving pattern as "hugging" the right side of the roadway. Based on the officer's observations, he suspected that Spies was operating the vehicle while intoxicated. The officer activated his vehicle's overhead lights and conducted a traffic stop. During the stop, the officer found evidence of marijuana and drug paraphernalia. The State charged Spies with possession of marijuana, possession of paraphernalia, destruction or concealment of evidence, and resisting arrest. Because Spies was a juvenile at the time of the stop, the State also charged him with violating curfew.

Spies subsequently filed a motion to suppress challenging the basis of the stop. The magistrate concluded that the failure to use the turn signal would normally justify the stop; however, the court reasoned that because the officer testified he did not pull Spies over for failure to signal, the observed infraction could not justify the stop. The court found that the remaining driving pattern fell within the broad range of normal driving behavior. The State appealed to the district court. The district court, sitting in its appellate capacity, reversed the magistrate's decision concluding that the stop was objectively reasonable. Spies timely appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

Spies argues the traffic stop was an unlawful seizure.[1] The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1] Spies also argues, for the first time on appeal, that Idaho Code § 49-808 is unconstitutionally vague. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Spies, relying on *Messmer v. Ker*, 96 Idaho 75, 524 P.2d 536 (1974), argues that this Court should review this constitutional issue. However, in *Messmer*, the Idaho Supreme Court granted a new trial on appeal and the statute reviewed for the first time had further importance at the new trial. *Id.* at 78, 524 P.2d at 539 ("Constitutional issues may be considered for the first time on appeal if such consideration is necessary for subsequent proceedings in the case."). Here, I.C. § 49-808 is only relevant to determine if the stop was valid; it has no further significance to Spies' case. Therefore, we decline to review Spies' argument raised for the first time on appeal. *See State v. Dewbre*, 133 Idaho 663, 667, 991 P.2d 388, 392 (1999) (plurality) (declining to review for the first time on appeal a constitutional vagueness challenge to I.C. § 49-808).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures.[2] *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

## A. Objective Standard

Spies argues that the reasonable suspicion standard is limited to the justification given by the officer to seize an individual and the facts to support that basis. Essentially, he argues that the State is bound by the officer's subjective rationale for the stop, rather than whether the specific articulable facts would objectively support a reasonable suspicion. Spies asks this Court to clarify this area of law. However, both federal and Idaho courts have previously addressed this issue. The United States Supreme Court explained:

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812-813, 116 S. Ct. 1769, 135 L. Ed.2d 89 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S. Ct. 1876, 149 L. Ed. 2d 994 (2001) (*per curiam*). That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the

---

[2]     Although Spies alleged that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Spies' claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren*, *supra*, at 813, 116 S. Ct. 1769 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." *Whren*, *supra*, at 814, 116 S. Ct. 1769. "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California*, 496 U.S. 128, 138, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The reason given by the officer need not even be closely related to the ultimate basis that supports probable cause. *Id.* at 153-55. Like probable cause, reasonable suspicion must be based on the objective information available to the officer. *See Prouse*, 440 U.S. at 654.

This Court has also explained the objective nature of the analysis relying on Idaho precedent:

> Probable cause and reasonable suspicion are objective tests. Neither test depends on the individual officer's subjective thoughts nor upon the bases previously offered by the state to justify the stop. *Deen v. State*, 131 Idaho 435, 436, 958 P.2d 592, 593 (1998) (reasonable suspicion); *State v. Murphy*, 129 Idaho 861, 863-64, 934 P.2d 34, 36-37 (Ct. App. 1997) (probable cause). Thus, in determining whether a traffic stop constituted a lawful seizure, courts freely apply relevant law to the objective facts presented, unconstrained by law enforcement's reasoning. This prevents costly resort to the exclusionary rule where a police officer or prosecutor merely fails to articulate the appropriate justification for an otherwise legal search or seizure. *State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct. App. 2001).

*State v. Young*, 144 Idaho 646, 648, 167 P.3d 783, 785 (Ct. App. 2006). The only relevant inquiry in this case is whether the officer had reasonable suspicion based upon an objective view of the information available to the officer at the time of the stop. The officer's offered basis justifying the stop is not determinative.

**B.     Idaho Code § 49-808**

The State argues that the stop was lawful based on Spies' repeated failure to engage his turn signal before moving from terminating turn lanes back into the continuing lane of travel. Idaho Code § 49-808(1) states: "No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the

5

movement can be made with reasonable safety nor without giving an appropriate signal." Thus, the issue presented here is whether Spies' movement when entering or exiting the two temporary right-hand lanes required him to signal. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history, or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

This Court previously examined I.C. § 49-808 in *Burton v. State, Dep't of Transp.*, 149 Idaho 746, 240 P.3d 933 (Ct. App. 2010).[3] In that case, as Burton traveled down the highway her lane expanded to include a left-hand lane designed to allow vehicles to pass. Burton stayed in the right-hand lane. A sign indicated that the lanes merged together, but there was no indication as to which lane terminated and which lane survived. Burton failed to signal as the lanes blended together. This Court held that the statute was unconstitutionally vague as applied to Burton because persons of ordinary intelligence could only guess at the statute's directive in her situation. However, this Court noted that unlike Burton's situation, the statute plainly requires signaling in instances where the motorist moves from a lane that clearly ends and enters another lane that continues. *Id.* at 749, 240 P.3d at 936.

---

[3] This Court also examined I.C. § 49-808 in *Dewbre*, 133 Idaho 663, 991 P.2d 388, a decision that resulted in three separate opinions, with no opinion garnering a majority of the Court.

Spies argues that his case is analogous to *Burton* in that the lanes on West Ustick Road blend together. We cannot agree. In *Burton*, we noted that there was no "signage or *other indicator* that one lane was ending and the other surviving." *Id.* (emphasis added). Here, the magistrate found that the left-hand lane was the main lane of travel and that the right-hand lanes were temporary. This finding is supported by substantial evidence. The temporary lanes began immediately before or after the intersections with 12th Drive and North Blairmore Way. This suggests the temporary lanes were designed, as described by the officer, to allow entrance into and exit from the subdivision. The short merge lane at 12th Drive and the turn lane at North Blairmore Way continue for a short distance and then terminate. Additionally, Spies' need to swerve back into the main lane of travel further shows that the right-hand lanes came to an end. Though there were no signs indicating which of the lanes ended, the roadway's construction made it clear that the right-hand lanes terminated. Because Spies moved the vehicle from the temporary lanes into the main lane of travel, he was required to signal. Therefore, Spies' failure to signal provided the officer a reasonable suspicion that Spies violated I.C. § 49-808.[4]

### III.

### CONCLUSION

The officer had reasonable suspicion to stop Spies based on his failure to signal. Therefore, the district court's order reversing the magistrate's order granting motion to suppress is affirmed, and the case is remanded to the magistrate court for further proceedings consistent with this opinion.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

---

[4] Because we determine that the officer had a lawful basis to stop Spies for failing to signal, we do not address the State's contention that the officer had reasonable suspicion that Spies was operating the motor vehicle while intoxicated.