**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41762**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Opinion No. 105 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: December 16, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| GAYLORD JAY COLVIN, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Carl B. Kerrick, District Judge. Hon. Jeff P. Payne, Magistrate

Order of the district court, acting in its intermediary capacity, reversing magistrate court order denying motion to suppress, reversed.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Chapman Law Offices, PLLC; Scott M. Chapman, Lewiston, for respondent. Scott M. Chapman argued.

_____

GRATTON, Judge

The State of Idaho appeals from the district court's intermediate appellate decision reversing the magistrate's order denying Colvin's motion to suppress evidence. We reverse.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The magistrate made the following findings of fact: The trooper that stopped Colvin followed him for roughly three to four miles in Lewiston. The trooper observed Colvin weaving within his own lane and driving five miles an hour below the posted speed limit. The trooper continued to follow Colvin on 5th Street. That road initially consists of one northbound lane and two southbound lanes. The trooper and Colvin were traveling south in the left-hand lane. Colvin activated his turn signal and moved into the right-hand lane; the trooper remained in the left-hand lane. As Colvin continued on 5th Street, a yellow diamond-shaped sign was posted

1

indicating that the right-hand lane merged into the left-hand lane. Past the sign, the two southbound lanes converge and the road continues as a single lane. Colvin did not signal upon driving through the area where the lanes converge into one. The trooper stopped Colvin for failing to signal. According to the probable cause affidavit admitted at the hearing, the trooper smelled the strong odor of an alcoholic beverage coming from the vehicle and observed that Colvin's eyes were bloodshot. Colvin subsequently failed standardized field sobriety evaluations. Colvin then provided two breath samples that showed a breath alcohol concentration of .123 and .134. Colvin was arrested for driving under the influence.

Colvin filed a motion to suppress, arguing the turn signal statute was unconstitutionally vague. The magistrate denied the motion, and after pleading guilty as part of a conditional plea agreement, Colvin appealed to the district court. Sitting in its appellate capacity, the district court reversed the magistrate's order. The State timely appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts,

weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The State argues the district court erred in concluding the trooper did not have reasonable suspicion to conduct the traffic stop. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures.[1] *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

The trooper stopped Colvin for failing to signal. Idaho Code § 49-808(1) states: "No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal." In *Burton v. State, Dep't of Transp.*, 149 Idaho 746, 240 P.3d 933 (Ct. App. 2010), this Court noted I.C. § 49-808 plainly requires signaling in instances where the motorist moves from a lane that clearly ends and enters another lane that continues. *Id.* at 749, 240 P.3d at 936. We further pointed out that the determination of which

---

[1] Colvin argues the stop violated his rights under Article I, Section 17 of the Idaho Constitution. As to general Fourth Amendment principles, Colvin has not argued that the Idaho Constitution should be applied differently in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Colvin's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

lane survives or terminates may stem from "signage or other indicator that one lane was ending and the other surviving." *Id.* This Court recently held that an officer had reasonable suspicion to make a stop where the driver failed to signal when merging. *State v. Spies*, 157 Idaho 269, 335 P.3d 609 (Ct. App. 2014).[2] In that case, the configuration of the roadway indicated that the right-hand lane terminated and the left-hand lane continued. The two short temporary right-hand lanes abruptly ended and the lanes were plainly intended to allow entrance into and exit from a subdivision. *Id.* at 274, 335 P.3d at 614.

Colvin contends that I.C. § 49-808 is unconstitutionally vague and the district court correctly reversed the magistrate's order. "[A] statute may be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it fails to establish minimal guidelines to govern law enforcement or others who must enforce the statute." *Burton*, 149 Idaho at 748, 240 P.3d at 935. Colvin argues that the roadway on 5th Street is analogous to the circumstances in *Burton*.[3] The roadway at issue in *Burton* consisted of two lanes that blended into one continuing lane. A sign indicated that the lanes merged, but failed to indicate which lane terminated and which survived. The configuration of the roadway also did not make it clear which lane terminated. Thus, this Court concluded that "It is simply not apparent from the language of Section 49-808(1) whether a signal is required when two lanes

---

[2] The magistrate and district court did not have the benefit of *State v. Spies*, 157 Idaho 269, 335 P.3d 609 (Ct. App. 2014).

[3] Colvin also claims that the statute is vague because the statute does not define what constitutes an "appropriate signal." In other words, when is it appropriate to signal? He argues that perhaps on 5th Street, in his circumstances, the appropriate signal is no signal. However, the statute's use of "appropriate" is not to indicate in what circumstances a motorist must signal. Instead, appropriate is used in relation to the type of signaling that must be given. For example, Idaho Code § 49-808(2) sets out what type of signaling is appropriate depending on the roadway:
> A signal of intention to turn or *move right or left when required* shall be given continuously to warn other traffic. On controlled-access highways and before turning from a parked position, the signal shall be given continuously for not less than five (5) seconds and, in all other instances, for not less than the last one hundred (100) feet traveled by the vehicle before turning.

(Emphasis added.) Thus, I.C. § 49-808(1) indicates when signaling is required, and if required, the appropriateness of the signal is measured against I.C. § 49-808(2). The appropriateness of a signal is also governed by other sections of the traffic code. *See* I.C. § 49-809 (signals "by means of hand and arm, or by signal lamps"); I.C. § 49-810 ("method of giving hand and arm signals").

blend into one." *Burton*, 149 Idaho at 749, 240 P.3d at 936. From this conclusion, we held that "Because Section 49-808(1) could not be constitutionally applied to her, Burton has shown that no legal cause existed to effectuate the traffic stop that led to her breath tests." *Burton*, 149 Idaho at 750, 240 P.3d at 937.

Here, the magistrate, in distinguishing *Burton*, explained "in the current case it is clear which lane of the two same-directional lanes ended and which lane continued because there was a traffic warning sign advising motorists that the right-hand southbound lane ended and the left-hand southbound lane continued." As noted, the district court disagreed. However, the sign provided Colvin with notice that the right-hand lane terminated and that he was directed to move into the continuing left-hand lane. As referenced by the magistrate, the Manual of Uniform Traffic Control Devices for Streets and Highways (MUTCD) describes the purpose of the sign on 5th Street as follows: "*the Lane Ends (W4-2) sign should be used to warn of the reduction in the number of traffic lanes in the direction of travel on a multi-lane highway (see Figure 2C-8).*"[4] MUTCD, 2009 Edition (including revisions 1 and 2), p. 126; *see also* Idaho Administrative Code 39.03.41.004 ("The 2009 edition including revisions 1 and 2 of the Manual with an effective date of June 13, 2012, is hereby incorporated by reference and made a part of the Rules of the Idaho Transportation Department."). Thus, the purpose of the sign is to indicate that the driver's lane is ending. Further, the MUTCD, section 2C.01, describes the function of warning signs: "Warning signs call attention to unexpected conditions on or adjacent to a highway, street, or private roads open to public travel and to situations that might not be readily apparent to road users." MUTCD, p. 103. The magistrate correctly found that:

> The above-referenced sign, posted along the right-hand shoulder of the right-hand southbound lane of 5th Street, was a warning sign that called attention to a situation that might not have been readily apparent--the right-hand southbound lane of 5th Street would be ending and a motorist in the right-hand lane would have to move left and merge with the left-hand southbound lane to continue.

(Footnote omitted.)

---

[4] Available at: http://mutcd.fhwa.dot.gov/pdfs/2009r1r2/mutcd2009r1r2edition.pdf, last accessed 10/1/2014. Figure 2C-8 provides an illustration of the sign pictured in the magistrate's decision, which is also viewable in the videos submitted by Colvin:



The trooper possessed reasonable suspicion to conduct a stop. As noted in *Burton*, signaling is required in circumstances where there exists "*signage* or other indicator that one lane was ending and the other surviving." *Burton*, 149 Idaho at 749, 240 P.3d at 936. (Emphasis added.) In *Burton*, neither the sign nor the road configuration made clear which lane terminated. In *Spies*, the road configuration itself indicated which lane ended. In this case, the sign indicated which lane ended. The sign on 5th Street clearly warns motorists that the right-hand lane terminates and vehicles in that lane must merge into the left-hand lane that continues. Thus, the sign provided Colvin fair notice that his lane ended and that under the statute he was required to signal.

Colvin asserts that because no discernable movement was required when the lanes converged into one that it was unclear if signaling was required. The district court concluded that Colvin was not required to make a movement to the left because the lanes gradually converged together. However, the configuration of the roadway makes plain that Colvin moved to the left, albeit gradually. Colvin drove parallel with the trooper in a separate lane of travel. Upon passing the point where the lanes merged, he drove in a position immediately in front of the trooper, no longer in his lane, but within the trooper's lane of travel. He thus made a movement to the left in leaving his lane, which ended, and entering into the trooper's lane.

### III.

### CONCLUSION

The sign provided notice that Colvin's lane terminated and that he was required to signal when moving into the continuing lane of travel. Colvin's failure to signal provided the officer with reasonable suspicion to conduct the traffic stop. Therefore, the district court's decision reversing the magistrate's order denying Colvin's motion to suppress is reversed.

Judge MELANSON and Judge Pro Tem SCHROEDER **CONCUR.**

6