# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35856

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

DUSTIN L. JAMES,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

Boise, December 2009 Term

2010 Opinion No. 5

Filed: January 27, 2010

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Hon. Mike Wetherell, District Judge.

The district court order denying the motion to suppress is <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Justin Curtis argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth Jorgensen argued.

_____

HORTON, Justice

This is an appeal from the district court's denial of Dustin James' motion to suppress. James asks this Court to decide whether an officer's threat to arrest all occupants of an automobile if one occupant did not incriminate himself or herself triggered a duty to provide *Miranda* warnings. Based upon the limited record before this Court, we conclude that James has failed to meet his burden of demonstrating that he was in custody for purposes of *Miranda*. We therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dustin James (James) was a passenger in a car stopped in the early morning hours of June 4, 2005, by an Elmore County Sheriff's deputy. In addition to James, two other people were in the car: the female driver and a male passenger who owned the car. The deputy obtained the owner's consent to search the vehicle. The occupants had already been removed from the car when a second deputy, Shaun Sterling, arrived. Deputy Sterling searched the car and found a

glass pipe and a brown and white hair "scrunchy."[1] Deputy Sterling found a small ziplock bag containing methamphetamine within the scrunchy.

Deputy Sterling then questioned the occupants of the car about who owned the drugs. No one admitted to ownership. Deputy Sterling conducted pat-down *Terry*[2] frisks of the occupants, but did not discover drugs[3] or weapons. At James' preliminary hearing, Deputy Sterling testified as follows:

> Q:    When you talked to [James] about the suspected controlled substance, what did you tell him?
> A:    I asked him to let me know whose property it was so I could make the proper arrest, if it was his property or whose ever property it was.

During cross-examination, he testified as follows:

> Q:    After you patted these people down, you then asked all three of them who the paraphernalia and drugs belonged to, is that right?
> A:    That is correct.
> Q:    Okay. And nobody fessed up, did they?
> A:    Not right away, no.
> . . . .
> Q:    And so you then stated to these people that if somebody didn't fess up you were going to arrest everybody, didn't you?
> A:    It was all in their possession in the car, inside of the car, somebody had to have some knowledge of it being there.
> Q:    Well, we will have another shot at it. Did you tell these people that if somebody didn't confess to ownership that you would arrest them all?
> A:    Yes.

James then stated that, because the owner of the car was on probation and because he didn't want the owner to go to jail, "I will take possession." Deputy Sterling then arrested James for possession of methamphetamine and possession of drug paraphernalia. James was not given *Miranda*[4] warnings prior to his formal arrest.

Following the preliminary hearing, on October 20, 2005, the state filed an information charging James with possession of a controlled substance. James pled not guilty on November 20, 2005. After a number of continuances, on March 6, 2006, James notified the court of his intention to request that his statements be suppressed. The court set May 2, 2006 as the date on which the motion to suppress would be heard. On May 2, 2006, James' attorney requested and

---

[1]  Deputy Sterling described the "scrunchy" as "like a rubber band, elastic type thing that holds your hair back."
[2]  *Terry v. Ohio*, 392 U.S. 1 (1968).
[3]  We do not suggest that a search for controlled substances is a legitimate purpose for a *Terry* pat-down.
[4]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

received an extension of time to file the motion and supporting brief. The court set May 15, 2006, as the date on which James's brief was due and scheduled a hearing for June 20, 2006. However, James' attorney waited until June 19, 2006 to file the motion and supporting brief.

At the hearing, James' attorney did not present testimony. The only evidence before the district court was the transcript of the preliminary hearing. As a result of the late filing of the brief and the State's inability to respond thereto, the district court did not consider James' brief but did consider his attorney's argument in support of the motion.

In its memorandum decision, the district court made relatively few findings of fact regarding the stop:

> The defendant was a passenger in a vehicle that was stopped for possible driving under the influence. During a search of the vehicle, and [sic] officer found what he suspected to be a controlled substance and drug paraphernalia. The defendant was then questioned about the items. The defendant was then arrested for possession of drug paraphernalia with intent to use, and was searched incident to that arrest.

The district court found that "this questioning was [not] unreasonable. An officer may continue questioning where new information leads to an extension of the inquiry." The court denied the motion to suppress and, on December 20, 2006, James entered a conditional plea of guilty.

On James' appeal of the motion to suppress, the Idaho Court of Appeals reversed the district court and remanded, finding that James' admission that he owned the methamphetamine was the product of a *Miranda* violation. This Court granted the State's petition for review.

## II. STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). This Court thus acts as if the case were on direct appeal from the district court. *State v. Cope*, 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006).

> In reviewing a district court order granting or denying a motion to suppress evidence, the standard of review is bifurcated. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). This Court will accept the trial court's findings of fact unless they are clearly erroneous. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). However, this Court may freely review the trial court's application of constitutional principles in light of the facts found. *Id.*

*State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009).

3

### III. ANALYSIS

The only issue raised before this Court is whether James was subjected to custodial interrogation such that *Miranda* warnings were required when he admitted possession of the methamphetamine and drug paraphernalia. In this appeal, we are not asked to determine whether the initial traffic stop, the search of the car, or the frisk of the vehicle occupants were lawful. We are not asked to decide whether the threat of arrest rendered James' confession involuntary or coerced in violation of the Fifth Amendment.[5] We conclude that a conditional threat of future lawful arrest alone does not transform detention into "custody" for purposes of *Miranda*. We therefore affirm the district court.

The U.S. Supreme Court's decision in *Miranda* requires that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." 384 U.S. at 471. *Miranda* warnings are required where a suspect is "in custody," a fact determined by "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). To determine whether custody has attached, "a court must examine all of the circumstances surrounding the interrogation." *Stansbury v. California*, 511 U.S. 318, 322 (1994). The test is an objective one and "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).[6]

We have stated that a court considering whether an individual is in custody "must consider all of the circumstances surrounding the interrogation." *State v. Doe*, 137 Idaho 519, 523, 50 P.3d 1014, 1018 (2002) (quoting *State v. Doe*, 130 Idaho 811, 816, 948 P.2d 166, 171 (Ct. App. 1997)). The present appeal is most remarkable for the absence of evidence regarding "all of the circumstances surrounding the interrogation." Neither this Court nor the U.S. Supreme Court has ever explicitly identified which party bears the burden of proof regarding custody for purposes of *Miranda*. We join the vast majority of courts that have considered the

---

[5] The question whether a person is "in custody" is related to the question of voluntariness of statements obtained by interrogation. Despite the underlying relationship, different analyses are applied to answer these questions. As the only issue presented in this appeal is whether James was subjected to custodial interrogation in violation of *Miranda*, we do not decide whether James' statements were voluntary.

[6] Specifically, the Court in *Berkemer* stated this principle to emphasize that a "policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer*, 468 U.S. at 442.

issue and hold that the burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *See, e.g.*, *State v. Kirby*, 908 A.2d 506, 528 (Conn. 2006); *State v. Pontbriand*, 878 A.2d 227, 230 (Vt. 2005); *Commonwealth v. Larkin*, 708 N.E.2d 674, 679 (Mass. 1999); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir.1984), *overruled on other grounds by United States v. Crawford,* 52 F.3d 1303 (5th Cir.1995). The rationale for this holding was described by the Maryland Court of Special Appeals as follows:

> At the threshold of showing the applicability of the *Miranda* requirements, however, the burden is on the defendant to show that applicability. This is the same shift in the allocation of the burden of proof as that which is made between 1) showing the applicability of the Fourth Amendment and 2) showing the satisfaction of the Fourth Amendment. The burden has always been allocated to a defendant to show the threshold applicability of the Fourth Amendment, to show, for example, the coverage of the place, state action, that the defendant had standing to object, etc.

*Smith v. State*, 974 A.2d 991, 1003 (Md. Ct. Spec. App. 2009).

The district court found that *Berkemer v. McCarty* applied to James' motion. McCarty, like James, was arrested after making un-Mirandized statements during a traffic stop. *Berkemer*, 468 U.S. at 423-24. The Court ruled that *Miranda* warnings were not required and that McCarty's statements should not be suppressed.

> The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*.

*Id.* at 440. However, the Court also noted that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*. *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam)." *Id.* The question in this case is whether the interaction was transformed from a temporary detention akin to a *Terry* stop into a custodial detention.

The Court in *Berkemer* considered a variety of factors: the short duration of the stop, the modest number of questions, and the visibility of the stop. *Id.* at 441-42. In addition, the Court noted that "[a]t no point during that interval was respondent informed that his detention would not be temporary." *Id.* We find that, based on the information before the district court, the

factors enunciated in *Berkemer* indicate that James was not in custody. The evidence before the district court did not disclose the duration of the detention in this case nor did it reveal the extent of questioning. As to the visibility of the stop, although it was nighttime, the stop took place on Interstate 84.[7] James was not handcuffed. Setting aside, for the moment, the effect of Deputy Sterling's threat of arrest, it is evident that James failed to demonstrate that his freedom of movement was restrained to the degree associated with formal arrest.

This brings us to the critical inquiry: the effect, if any, of Deputy Sterling's threat to arrest the occupants of the vehicle if no one admitted possessing the contraband that he located. We find that the threat of lawful arrest alone does not transform non-custodial questioning into the functional equivalent of arrest, requiring *Miranda* warnings. Deputy Sterling, upon finding drugs in the car, had probable cause to arrest all of the occupants. Deputy Sterling's statement of his intended future conduct cannot be said to objectively change the degree of restraint *at the time of the statement*. Although such a threat may well have implications as to the voluntariness of any statement made in response thereto, it cannot be said to have objectively modified the degree of restraint on James' freedom of movement at that time.

Based on the limited evidence presented to the district court, we conclude that James failed to meet his burden of demonstrating, under the totality of the circumstances, that his freedom of movement had been curtailed to the extent associated with a formal arrest. Thus, *Miranda* warnings were not required. Accordingly, we affirm the decision of the district court.

### IV. CONCLUSION

James failed to meet his burden of establishing that he was in custody at the time of questioning. We therefore affirm the district court's denial of the motion to suppress his statements.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.

---

[7] The only information regarding the stop that was available to the district court was the preliminary hearing testimony of Deputy Sterling. The deputy who made the stop did not testify.