**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42691**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 56** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed:  September 8, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JON STEVEN HUFFAKER,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County.  Hon. Alan C. Stephens, District Judge.

Order granting motion to suppress, <u>affirmed in part</u>, <u>reversed in part</u>, and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.

Cannon Law, PA; David M. Cannon, Blackfoot, for respondent.

_____

GUTIERREZ, Judge

The State appeals from the district court's order suppressing oral statements and a written statement made by Jon Steven Huffaker because of a determined *Miranda*[1] violation.  The State asserts that the district court erred because Huffaker was not in custody at the time of the oral statements and because the written statement was not in response to police questioning, and therefore no *Miranda* warnings were required.  For the reasons set forth below, we affirm in part, reverse in part, and remand.

---

[1]     *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that a suspect in custody must be informed, prior to interrogation, that he "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

After the Custer County Sheriff's Office received a complaint from Ben Savage that Huffaker had threatened him with a rifle outside of Huffaker's camper trailer, Deputy Maydole dispatched Deputy Kramer to keep an eye on the trailer while Maydole prepared a search warrant for seizure of the rifle. As Kramer was selecting a location to set up near the trailer, he spotted Huffaker in a field with his dog, walking back toward his camper trailer. Kramer pulled into the parking lot adjacent the field and Huffaker began approaching the patrol vehicle. Kramer did not activate his emergency lights or siren and he made no show of force; instead, he stopped his vehicle and opened his door.

Kramer and Huffaker, who were previously acquainted, began talking about what Huffaker was up to. Kramer asked Huffaker if he had gotten into an argument with Savage that morning. Huffaker responded that he had, further explaining that when he tried to wake Savage up for coffee, Savage responded by "poking" him in the nose.[2] Huffaker admitted to retrieving his rifle from his camper trailer and asking Savage, "Do you want to fight now?"

Kramer informed Huffaker that Savage had reported the incident to Maydole and that Maydole was "down at the office and would probably like to talk to him about it." Huffaker responded, "That would be fine." Kramer, noticing that Huffaker appeared to be intoxicated, offered him a ride. Huffaker accepted. Huffaker sat in the front passenger seat and his dog rode in the backseat. Kramer did not handcuff, frisk, or touch Huffaker. No conversation of import occurred between the men in the four-to-five-block ride to the office.

Once the two men arrived at the Custer County Sheriff's Office, around six o'clock in the morning, Maydole questioned Huffaker about the morning's events in the "booking room." This room, connected to the 20-foot-wide front lobby by a 7-foot vestibule, is not a typical isolated interrogation room; instead the room is a working part of the sheriff's office with desks and filing cabinets. The front lobby door, through which Kramer and Huffaker entered, was not locked and no doors to the booking room were shut or locked during the interrogation. In fact, Huffaker entered the room of his own accord and was left unattended prior to the questioning.

---

[2] Savage and Huffaker had visited a Challis bar together the previous night, leaving about 1:30 a.m. Savage had then slept in his vehicle outside Huffaker's trailer, as the two men were planning to continue working together on a fence construction job the following morning.

The interrogation, which lasted approximately six minutes, was relaxed and informal. Maydole began by inquiring about what happened that morning. Huffaker explained that after Savage struck him in the nose, Huffaker retrieved his rifle from his camper trailer and asked Savage, "You know how to operate one of these things?" Maydole elicited from Huffaker that he did not intend to shoot Savage, only to scare him. Maydole responded, "Well it worked, you scared him." The two men then laughed together. During the interrogation, other officers entered and exited the room, but Maydole was the only officer participating in Huffaker's interrogation.

Less than seven minutes after the interrogation began, Maydole informed Huffaker that he was under arrest. Huffaker then asked to call a third person to pick up his dog. During the phone call, Huffaker made additional incriminating statements.

Sometime after the arrest, Maydole provided Huffaker with a "Voluntary Statement" form, which Huffaker subsequently ripped apart. Then, about three hours after his arrest, Huffaker asked Kramer for a replacement form with the apparent intent to charge Savage with battery. In filling out this form, Huffaker made additional incriminating statements in the "explain what happened (who, what, where, when, why, times and places)" section of the form. A typewritten paragraph at the bottom of the form read: "The above statement is true and correct to the best of my knowledge. Providing false information may result in criminal charges under Idaho code 18-5413." Huffaker signed his name under this paragraph. Later that same day, Huffaker initiated the return of the completed form to Kramer. At no time before, during, or after the interrogation or arrest did any officer read Huffaker his *Miranda* rights.

After Huffaker was charged with aggravated assault, Idaho Code § 18-905(a), he filed a motion to suppress his oral statements and written statement. He contended that he was in custody when he made the oral and written statements, and because no *Miranda* warnings were ever given, his statements were inadmissible at trial. After a hearing, the district court granted the motion, suppressing Huffaker's oral statements and written statement. The district court concluded that Huffaker was in custody during Maydole's interrogation for the following reasons:

> [Huffaker] had no way of returning home because he was intoxicated and Kramer had given him a ride to the station. [Huffaker] was questioned as the sole suspect by a law enforcement officer. He was never told he was free to leave. A normal

3

person in [Huffaker's] circumstances would not have believed they could end the interview and freely leave the police station.

The district court did not provide justification for suppressing the written statement. The State appeals.

## II.

## ANALYSIS

On appeal, we address whether the trial court properly suppressed Huffaker's oral statements made during the police interrogation prior to his arrest and Huffaker's written statement made while he was in custody. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).

### A.      Suppression of Oral Statements

Huffaker's oral statements made to police during express questioning at the sheriff's office were undoubtedly the result of interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (concluding that interrogation includes express questioning and its functional equivalent). Therefore, the issue in this appeal is whether Huffaker was in custody at the time he made the incriminating oral statements.

The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Id.* This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

4

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered may include the degree of restraint on the person's freedom of movement (including whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

In its written order, the district court found that Huffaker was in custody during Maydole's questioning because (1) Huffaker was intoxicated; (2) Huffaker had no way of returning home, as he had been driven to the station; (3) Huffaker was questioned as the sole suspect by an officer; (4) Huffaker was not told he was free to leave; and (5) a "normal person" in the same situation would not have believed they could stop the interview and leave the police station. Initially, we decide whether the court properly considered those factors in its custody analysis. Next, we examine the totality of the circumstances to determine whether Huffaker was in custody for purposes of *Miranda* at the time of the interrogation.

First, the court erred by considering Huffaker's intoxication as a factor in the custody analysis. United States Supreme Court precedent makes clear that intoxication is not considered under the objective test. *See, e.g.*, *Berkemer*, 468 U.S. 420, 441-42; *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). The benefit of the objective custody analysis is that it is "designed to give clear guidance to the police." *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004). Because police must often make in-the-moment judgments as to when to administer *Miranda* warnings, limiting the analysis to how a reasonable person in the suspect's position would understand his freedom to terminate questioning and leave avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect and divining each person's subjective state of mind. *J.D.B. v. N. Carolina*, ___ U.S. ___, ___, 131 S. Ct. 2394, 2402 (2011); *Berkemer*, 468 U.S. at 430-31, 441. In other words, the determination of whether a subject is in custody is based upon the totality of the "objective circumstances of the interrogation," free from

5

consideration of the subject's personal and individual characteristics, traits, and idiosyncrasies. *Stansbury*, 511 U.S. at 323; *Berkemer*, 468 U.S. at 442.[3] Thus, to the extent that the district court relied on Huffaker's intoxication as a factor in determining whether he was in custody, the court erred.

Second, the district court erred by concluding that Huffaker was in custody because he had no way of returning home after receiving a ride to the station from a deputy, and because he was questioned as the sole suspect. The district court considered these circumstances as factors based upon similar circumstances found in a previous custody analysis undertaken by this Court in *Medrano*, 123 Idaho 114, 844 P.2d 1364. In that case, the defendant argued on appeal that he was in custody because "he was transported to the station by the police and had no independent transportation to leave if he had wanted; he was a suspect and the focus of the investigation; and the purpose of the interrogation was to elicit information upon which criminal charges could be based." *Id.* at 118, 844 P.2d at 1368. However, in that case this Court did not establish those circumstances as relevant factors. *Id.* Instead, we agreed with the trial court's holding that the defendant was not in custody based upon objective factors such as the number of officers and the defendant's ability to leave after the interview. *Id.* A defendant's lack of transportation to leave the police station is irrelevant to an objective determination of whether a reasonable person would have felt freedom to terminate the interrogation and leave. Thus, the court erred in considering Huffaker's lack of transportation as a factor in its analysis.

Finally, the court erred in considering the fact that a defendant is "a suspect and the focus of the investigation" or that "the purpose of the interrogation was to elicit information upon which criminal charges could be based." Both of these inquiries relate directly to subjective police motivations for questioning a particular individual and are irrelevant to an objective custody analysis. Therefore, the court erred in considering these factors in its custody analysis.

---

[3]     The United States Supreme Court has qualified this rule with one exception, holding that if the subject of interrogation is a minor child, the age of that child is a relevant consideration. *J.D.B. v. N. Carolina*, ___ U.S. at ___, ___, 131 S. Ct. 2394, 2406 (2011) ("[W]e hold that so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of [the custody] test."). *See also State v. Doe*, 130 Idaho 811, 818-19, 948 P.2d 166, 173-74 (Ct. App. 1997).

We next turn to our examination of the totality of the circumstances surrounding Huffaker's interrogation. There are certainly facts in the record that support finding that Huffaker was in custody. First, Huffaker did not invite the interview; officers transported him to the sheriff's office in a law enforcement vehicle; he was questioned by a uniformed officer at the sheriff's office; other officers were transitorily present in the room; and he was not told before the interview that he was free to leave at any time.

However, these facts are far outweighed by others that support finding Huffaker was not in custody. During his initial contact with Huffaker, Kramer did not activate his emergency lights or siren and he made no show of force. Kramer told Huffaker that Savage had reported the rifle incident to Maydole and that Maydole was "down at the office and would probably like to talk to him about it." These specific words are significant because Kramer in no way signified that Huffaker was required to speak with Maydole. Huffaker responded, "That would be fine," and he voluntarily accepted a ride to the sheriff's office. Kramer did not handcuff, frisk, or touch Huffaker at any time. Huffaker sat unrestrained in the front passenger seat next to the officer, accompanied by his dog, sitting in the backseat, during the four-to-five-block ride to the sheriff's office.

Once at the sheriff's office, Maydole questioned Huffaker in the booking room--a working part of the office--and no doors to the booking room were shut or locked during the interrogation. In fact, Huffaker sat unrestrained in a chair directly next to the open office door. Maydole was the only officer participating in the questioning; therefore, the atmosphere was not police dominated. The interrogation was short, lasting only about six minutes, and the manner in which Maydole conducted the interrogation was relaxed and informal. Huffaker was not restrained, handcuffed, frisked, or touched by the police at any time.

The totality of the circumstances here fall far short of establishing custody for *Miranda* purposes. Huffaker failed to prove that he was even detained, much less that he was detained to a degree associated with formal arrest. Therefore, the district court erred in granting the motion to suppress Huffaker's oral statements made during the interrogation.

## B. Suppression of Written Statement

Huffaker's written statement was made after his arrest; for *Miranda* purposes, there is no doubt that Huffaker was in custody. Because Huffaker was never apprised of his *Miranda* rights, at issue is whether Huffaker's written statement was the product of interrogation.

7

*Miranda* safeguards apply when a person is both in custody and subject to interrogation or its "functional equivalent." *Innis*, 446 U.S. at 300-01. The functional equivalent of interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301. We use an objective standard to determine whether an officer should know his or her conduct is reasonably likely to elicit an incriminating response. *See State v. Salato*, 137 Idaho 260, 267, 47 P.3d 763, 770 (Ct. App. 2001).

The State argues that even though Huffaker was in custody at the time of his written statement, it was not made in response to police interrogation and *Miranda* does not apply. The record does not indicate whether Huffaker requested the voluntary statement form, or whether Maydole told him to complete the form. There is nothing in the record indicating that Huffaker was required to complete the form, as he destroyed the first form without consequence. He then requested a replacement form independently from police suggestion. After receiving the second form around nine o'clock in the morning, he took several hours to complete the form, signaling for Kramer to retrieve the completed form in the afternoon. Further, its title unambiguously indicated that the form was a "voluntary statement."

However, the interrogation inquiry here hinges not on Huffaker's or the specific officers' treatment of the form, but on whether, from an objective standpoint, the police *should have known* that their conduct of providing the form to Huffaker would be *reasonably likely* to elicit an incriminating response. The form specifically instructs individuals to "explain what happened (who, what, where, when, why, times and places)" and further warns signors against providing false information under penalty of criminal charges. Thus, the whole purpose of the form is to obtain the signor's version of the events. A reasonable, objective officer *should know* that providing that particular form to someone in custody is *reasonably likely* to elicit an incriminating response. More specifically, providing the form under the circumstance where the officer already knows that the signor's version of the events includes incriminating information is the functional equivalent of interrogation. The officers should have known that it would be reasonably likely to elicit an incriminating response. Therefore, we hold that the district court did not err in suppressing Huffaker's unwarned written statement obtained in violation of *Miranda*.

8

### III.
### CONCLUSION

The district court's order granting Huffaker's motion to suppress is affirmed as to his written statement because it was made as a result of a custodial interrogation in violation of *Miranda*; however, the order is reversed as to Huffaker's oral statements because he was not in custody when the statements were made. This case is remanded to the district court for proceedings consistent with this opinion.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.