# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45343

|  |  |  |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, December 2017 Term |
| Plaintiff-Respondent, | ) | |
| v. | ) | 2018 Opinion No. 3 |
| ROY AYERS BAXTER JR., | ) | Filed: January 5, 2018 |
| Defendant-Appellant. | ) | Karel A. Lehrman, Clerk |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

District court order denying motion to withdraw guilty plea, affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds, Deputy Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Russell J. Spencer, Deputy Attorney General argued.

_____

BURDICK, Chief Justice.

Roy Ayers Baxter Jr. appeals his judgment of conviction entered in the Ada County district court. On appeal, Baxter contends the district court abused its discretion by denying his motion to withdraw his guilty plea. The Court of Appeals affirmed, and this Court granted Baxter's timely petition for review. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2016, after drinking alcohol for most of the day, Baxter "backhanded [his] wife in the throat area" while the two were driving in his car. When they eventually stopped driving and got out of his car, they continued arguing, and Baxter "threatened to kill her and punched her in the arm." Baxter's abuse left his wife with "a traumatic injury" and bruising. A no-contact order prohibiting Baxter from attempting to "contact, harass, follow, communicate

1

with, or knowingly remain within 100 feet of: [his wife]" was issued shortly thereafter, but Baxter "call[ed] and talk[ed]" to his wife "between 1-14 times" after the issuance of the no-contact order.

On March 17, 2016, the State charged Baxter with domestic violence under Idaho Code section 18-918(2) and violating the no-contact order under Idaho Code section 18-920. The State proposed a plea agreement, whereby, in exchange for Baxter's plea of guilty on the domestic violence charge, the State agreed to dismiss several other charges[1] and recommend probation on the condition that a domestic violence evaluation rated Baxter's likelihood to reoffend at "less than high risk[.]" As an additional contingency, the plea agreement prohibited Baxter from "acquiring a new criminal charge or charges between the date of this offer and sentencing, even if the charge or charges are not yet conviction(s)."

Baxter was initially uncertain about whether to accept the State's proposed plea agreement. As Baxter's counsel explained:

> [Baxter] wasn't sure about how he wanted to proceed. I advised him, well, let's get a domestic violence evaluation and see how it turns out. And if ultimately it comes back less than high risk, we have a plea agreement for probation. You can decide what you want to do. So we did.

To that end, on June 17, 2016, Baxter obtained a domestic violence evaluation from Dr. Bill Arnold, Ph.D. During the evaluation, Baxter stated that he had "experiment[ed] with marijuana and cocaine," but his only present usage of drugs was "social beer drink[ing]." He did not disclose use of methamphetamine. Further, Baxter explicitly denied hitting his wife or causing her injury. Dr. Arnold concluded Baxter "falls in the group of offenders who display a moderate to high risk of future violent offending."

On June 28, 2016, when the State reviewed the domestic violence evaluation, it grew concerned over "gross omissions" it felt Baxter had made concerning his drug use and violent conduct. The State informed Baxter's counsel that it would not recommend a bond reduction of less than $100,000 with pretrial release conditions, but the State did not indicate it intended to challenge the evaluation.

On July 1, 2016, Baxter entered a plea of guilty under the plea agreement. Six days after the district court accepted Baxter's plea, the State contacted Dr. Arnold to communicate

---

[1] Those other charges included several no-contact order violations, resisting and obstructing, and intimidating or influencing a witness.

statements Baxter had made to the district court when entering his plea. The State recited its email during a hearing before the district court as follows:

> I am writing you about [Baxter] whom you conducted an evaluation on last month. I've included his attorney on this email so that he is aware of my communication with you. When I read the evaluation, I was concerned with the omissions [Baxter] had made, so I wanted to update you with the information he provided subsequent to your evaluation during his entry of plea last Friday.
>
> I am not sure if it will change the outcome of your report finding a risk level, but thought it would be important for you to know and consider. When telling the court what he did, he said he had been drinking all day and doing meth. He said, quote, one thing led to another, and the next thing you know I backhanded her on the neck. Also in the scuffle with the neighbor, I did hit her in the arm, and she had a bruise, unquote.[2]
>
> Please let us know if this has any impact on your finding of risk.

Dr. Arnold reviewed that information and, on July 8, 2016, concluded Baxter "now falls into the group of offenders who display a high risk of future violent offending." Dr. Arnold's conclusion in this regard discharged the State from its obligation to recommend probation since the plea agreement stated the State's probation recommendation was "CONTINGENT ON BEING LESS THAN HIGH RISK ON DV EVAL[.]"

On July 20, 2016, the State filed new, unrelated charges against Baxter for fraudulent misappropriation of personal identifying information and petit theft. These additional charges discharged the State from its obligation to recommend probation because the plea agreement stated the State's probation recommendation was contingent on Baxter's not "acquiring a new criminal charge or charges between the date of this offer and sentencing, even if the charge or charges are not yet conviction(s)."

On August 5, 2012, Baxter's presentence investigation report (PSI) was issued. The PSI considered Dr. Arnold's initial evaluation, but not his later evaluation. Unlike what Baxter had told Dr. Arnold, the PSI indicated that Baxter had confessed to "backhand[ing his wife] in the throat." The PSI further indicated that Baxter had a history of methamphetamine use. And considering Baxter had been drinking alcohol on the day of the incident and had several driving under the influence convictions, the PSI noted that Baxter "may be underreporting his alcohol use." Accordingly, the PSI recommended that Baxter be placed on a rider.

---

[2] The State appropriately found this information to be material, as Baxter had previously told Dr. Arnold he denied hitting his wife or causing her injury.

3

On August 16, 2016, Baxter moved to withdraw his guilty plea. As Baxter argued, the State's "intervention with Dr. Arnold after [Baxter] entered his guilty plea rendered the plea agreement in this case meaningless." Baxter did not assert innocence. The district court denied the motion, concluding Baxter had not met his burden to show the existence of a "just reason" to withdraw his plea. The Court of Appeals affirmed, and this Court granted Baxter's timely petition for review.

## II. STANDARD OF REVIEW

When addressing a petition for review, this Court will give "serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Schall*, 157 Idaho 488, 491, 337 P.3d 647, 650 (2014) (citation omitted). "This Court thus acts as if the case were on direct appeal from the district court." *State v. James*, 148 Idaho 574, 576, 225 P.3d 1169, 1171 (2010). "The decision to grant a motion to withdraw a guilty plea is left to the sound discretion of the district court, and such discretion should be liberally applied." *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008). To determine whether the district court abused its discretion, this Court evaluates whether the district court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with relevant legal standards; and (3) reached its decision by an exercise of reason. *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003).

## III. ANALYSIS

On appeal, Baxter does not dispute that the district court properly recognized his motion triggered its discretion and acted consistently with the applicable legal standards. Instead, Baxter contends the district court failed to reach its decision by an exercise of reason. For the reasons below, we disagree.

Idaho Criminal Rule 33(c) governs motions to withdraw guilty pleas and states specifically that a "motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the defendant's plea."[3] Thus, "[t]he timing of the motion is significant; when the motion is made

---

[3] Baxter moved to withdraw his guilty plea on August 16, 2016. Effective July 1, 2017, Rule 33(c) was amended to read: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court may set aside the judgment of conviction after sentence and may permit the defendant to withdraw a plea of guilty."

before sentencing, a defendant need only show a 'just reason' to withdraw the plea." *Arthur*, 145 Idaho at 222, 177 P.3d at 969. The threshold "just reason" requirement is a "not an onerous burden. It is a reasonable requirement, to be administered liberally and with due recognition of the serious consequences attending a guilty plea." *State v. Ballard*, 114 Idaho 799, 804, 761 P.2d 1151, 1156 (1988). If the defendant successfully points to a just reason, the burden then shifts to the State to show that "prejudice would result if the plea were withdrawn." *State v. Flowers*, 150 Idaho 568, 571, 249 P.3d 367, 370 (2011). On the other hand, a motion to withdraw a guilty plea made after sentencing requires a more stringent showing that withdrawing the plea is necessary to correct "manifest injustice." I.R.C.P. 33(c); *accord Flowers*, 150 Idaho at 571, 249 P.3d at 370 (quoting *State v. Heredia*, 144 Idaho 95, 97, 156 P.3d 1193, 1195 (2007)).

Rule 33(c)'s distinction in this respect recognizes that, "if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." *State v. Creech*, 109 Idaho 592, 594, 710 P.2d 502, 504 (1985) (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). "Nonetheless, even when the motion is presented before sentencing, if it occurs after the defendant has learned of the content of the PSI or has received other information about the probable sentence, the district court may temper its liberality by weighing the defendant's apparent motive." *Arthur*, 145 Idaho at 222, 177 P.3d at 969; *accord State v. Hartsock*, 160 Idaho 639, 641, 377 P.3d 1102, 1104 (Ct. App. 2016).

Since Baxter moved to withdraw his guilty plea before sentencing, the onus was on Baxter to point to a "just reason" to withdraw his plea. With that aim in mind, Baxter's frontline argument concerns how the State contacted Dr. Arnold six days after Baxter entered his plea. As a result of that communication, Dr. Arnold updated his initial evaluation by concluding that Baxter "now falls into the group of offenders who display a high risk of future violent offending." Dr. Arnold's conclusion in this regard discharged the State from its obligation to recommend probation under the plea agreement.

Disputing the State's communication with Dr. Arnold, Baxter notes that the State already had possession of Dr. Arnold's initial evaluation when he entered his plea, and while the State indicated it felt that Baxter had made "gross omissions" during the evaluation, the State never indicated it intended to challenge the evaluation. Baxter's counsel recognized "discrepancies" in Baxter's statements. Those discrepancies notwithstanding, Baxter emphasizes that

5

Dr. Arnold should have already known [everything] because it's all in the police reports and in the preliminary hearing transcript. So he had the same exact information when he put the [initial] report together that he had after the prosecutor talked to him. There's no new information. There's no additional information.

Baxter has not persuaded us. Instead, we conclude the district court reached its decision by an exercise of reason. Regarding Baxter's argument that the State contacted Dr. Arnold with "new" information, the district court reasoned that "the prosecutor gave [Dr. Arnold] information that is by definition new. The prosecutor told [Dr. Arnold] what [Baxter] said to me in open court after the evaluation was created." Importantly, the district court clarified that the State did not "argu[e] with [Dr. Arnold] about old information, [Dr. Arnold] already ha[d], and suggest[] that [Dr. Arnold] . . . reach a different conclusion based on the already-existing information." Rather, Baxter's statements at the plea hearing constituted "new" information, the district court properly concluded, because "[t]he admissions themselves, having been made in open court in making of the guilty plea, weren't available to [Dr. Arnold]."

The district court further reasoned that Baxter "believed he had a better chance at probation beforehand when he entered his guilty plea, and that . . . is motivating the desire to withdraw the guilty plea more than anything." In light of Baxter's apparent motive, the district court found it appropriate to temper the liberal application of its discretion. *See, e.g.*, *Arthur*, 145 Idaho at 222, 177 P.3d at 969. The record fully supports the district court's reasoning. As to Baxter's initial belief of a probation sentence, Baxter knew before he entered his plea that Dr. Arnold had initially evaluated his risk to reoffend as moderate, which bound the State to recommend probation under the plea agreement. Although Baxter highlights that the State's probation recommendation would not have bound the district court to so order, it remains undisputed that only with that evaluation in hand and knowledge of its contents did Baxter enter his guilty plea.

Yet, Baxter's initial belief of a probation sentence was undermined by two significant post-plea developments, which shed further light on Baxter's apparent motive. First, Baxter's PSI recommended a rider, not probation. The PSI considered only Dr. Arnold's initial evaluation, as "the presentence investigator wasn't aware of any uptick in the risk assessment by [Dr. Arnold] at the time the recommendation was made." Second, the State filed new, unrelated

6

charges against Baxter after the plea was entered.[4] These additional charges—for fraudulent misappropriation of personal identifying information and petit theft—were filed on July 20, 2016. These additional charges, in turn, discharged the State from its obligation to recommend probation under the plea agreement, irrespective of Dr. Arnold's high-risk evaluation. Indeed, the plea agreement was explicitly contingent on Baxter "not acquiring a new criminal charge or charges between the date of this offer and sentencing, even if the charge or charges are not yet conviction(s)." Only after learning of Dr. Arnold's updated evaluation, the contents of the PSI, and the filing of new charges—all of which were likely to have a probable impact on Baxter's sentence—did Baxter move to withdraw his plea on August 16, 2016. Accordingly, it was proper for the district court to temper the liberal application of its discretion. *Cf. Arthur*, 145 Idaho at 221–22, 177 P.3d at 968–69 (affirming the denial of defendant's motion to withdraw guilty plea that was made "after seeing his presentence investigation report (PSI), which indicated he had been convicted of or charged with numerous other felonies and misdemeanors"); *Hartsock*, 160 Idaho at 642, 377 P.3d at 1105 ("Hartsock's motion to withdraw her guilty plea was made after the preparation of her PSI, which recommended retained jurisdiction. Consequently, the district court was entitled to take Hartsock's awareness of the PSI and sentence recommendation into account when ascertaining her motive for withdrawing her plea.").

Baxter, however, asserts the State misled Dr. Arnold with the information it provided to him six days after Baxter pled guilty. He specifically contends the State mischaracterized his methamphetamine use by telling Dr. Arnold that, "[w]hen telling the court what he did, [Baxter] said he had been drinking all day and doing meth." According to Baxter, he never conceded

---

[4] At the motion to withdraw the plea hearing, Baxter contended "[t]he State should have known that new charges were coming[,]" and the new charges thus show the State manipulated the plea process. Baxter mentions this only in passing in his opening brief. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("[I]f the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court."). But in any event, his concern is unfounded. Baxter's counsel stated he "d[id]n't think [the specific prosecutor here] had anything to do with the filing of the new charges. I'm certain she knew they were out there and were potentially coming, but I don't think that played into her decision, frankly." In response, the prosecutor stated she "had no part in the filing of those new charges. [She] had no knowledge that the reports were even forwarded to our office for charges." The district court ultimately found:

> There hasn't been a showing that the prosecutor involved in this case had any knowledge about what was going on with those new charges, when they might come down. . . .
> To the extent it's a factor at all, I think it is a factor in the same way the *Hartsock* Court suggests, something like this might be. It may go to whether the defendant has sensed which way the wind is blowing and therefore wants to withdraw his guilty plea.

Baxter has not challenged these findings on appeal. *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010) (explaining that argument is waived if "not supported by any cogent argument or authority" in opening brief).

using methamphetamine on the day of the incident, but instead had conceded using methamphetamine "a couple days" before the incident.

Baxter's argument is futile. At the outset, Baxter has not argued for fundamental error review even though he did not raise this argument below. *State v. Doe*, 123 Idaho 370, 371, 848 P.2d 428, 429 (1993) ("In general, issues presented for the first time on appeal will not be considered. However, an exception to the general rule may be made where the issue raised involves fundamental error." (citations omitted)). In fact, this argument is inconsistent with what Baxter argued below. Baxter's counsel stated at the hearing on Baxter's motion to withdraw his plea that Baxter "had been drinking and using meth that day," and further clarified that Baxter "does admit to using meth earlier in the day." Baxter did make statements apparently to the contrary when entering his plea, stating that, "Valentines [sic] weekend, February 14, me and my wife were out and about, and going to -- been drinking most of the day and spending -- we were just out drinking and partying that weekend. Before that, a couple days, it was actually out partying and doing meth." However, it remains undisputed that the motion to withdraw hearing transcript shows that Baxter had been using methamphetamine on the day of the incident. It is further undisputed that Baxter initially told Dr. Arnold,

> the cops arrested me because they thought I had [hit her]; and, then [a neighbor] said that I closed fist punched her in the throat twice—which never happened. The medical records, you probably have seen--there was no marks, no scratches, no bruises, no nothing; and, then that's what they arrested me.

He later contradicted himself by admitting that he "backhanded her in the neck," and that this abuse left his wife with "a traumatic injury" and bruising. The State appropriately found Baxter's statements at the plea hearing concerning his methamphetamine use and violent conduct to be material, as Dr. Arnold was entitled to complete and correct information concerning Baxter's description of the incident in his own words, acceptance of responsibility, current and past violent conduct, present drug use, and involvement of substance abuse in the incident under Idaho Criminal Rule 33.3(c) (2016).[5] Baxter's arguments ask this Court to erroneously endorse

---

[5] Dr. Arnold completed his initial evaluation on June 17, 2016, and later supplemented it on July 8, 2016. Effective July 1, 2017, Rule 33.3 was amended with a general restructuring of the rule, but the material requirements governing the scope of the domestic violence evaluation are substantially identical to pre-amended Rule 33.3. We take this opportunity to clarify that Rule 33.3, currently and as it existed at the time of the evaluations here, requires disclosure of present drug use. Methamphetamine use, even if from two days prior to the incident at issue, is present drug use.

8

the notion that a defendant can create a just reason to withdraw a guilty plea by fabricating false circumstances.

Because Baxter has not shown the existence of a just reason to withdraw his guilty plea, prejudice to the State need not be evaluated, and we conclude the district court did not abuse its discretion by denying Baxter's motion to withdraw his guilty plea.[6]

## IV. CONCLUSION

We affirm Baxter's judgment of conviction because Baxter has shown no error in the district court's denial of his motion to withdraw his guilty plea.

Justices JONES, HORTON, BRODY and BEVAN, **CONCUR.**

---

[6] The district court additionally found Baxter's plea was voluntary, knowing, and intelligent. Since Baxter has not challenged this finding on appeal, we do not address it. *Bach*, 149 Idaho at 374, 234 P.3d at 698 (explaining that argument is waived if "not supported by any cogent argument or authority" in opening brief).