# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48159

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: December 13, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| WILLIAM JOHN BECKLUND, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Bradly S. Ford and Deborah A. Bail, District Judges.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer Jensen, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

William John Becklund appeals from his judgment of conviction for possession of a controlled substance. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

An officer on bicycle patrol observed Becklund holding an eyeglass case while interacting with another man law enforcement believed was involved in the drug trade. Suspecting a drug transaction, the officer approached the pair. Becklund began walking away after noticing the officer's approach. The officer rode his bike up next to Becklund who, in response to unknown

1

comments from the officer,[1] shook out a bag he was holding, causing several syringes to fall out. Following several commands from the officer to sit down, Becklund complied. The officer questioned Becklund about his interaction with the other man, the syringes, and the contents of the eyeglass case. In response, Becklund made incriminating statements and consented to a search of the eyeglass case. The search yielded what appeared to the officer to be a methamphetamine pipe and "methamphetamine cleaning tools." Shortly after, the officer handcuffed Becklund and placed him under arrest. A search of Becklund's clothing yielded a small amount of methamphetamine and several more syringes. The State subsequently charged Becklund with possession of a controlled substance, possession of drug paraphernalia, and a persistent violator sentencing enhancement.

Becklund moved to suppress evidence obtained after his detention, contending that the officer lacked reasonable suspicion to detain Becklund and that the officer's questioning violated Becklund's rights under *Miranda v. Arizona*, 384 U.S. 436 (1996). The State conceded that any statements Becklund made after being handcuffed should be suppressed, but argued that statements he made before that point were not obtained in violation of *Miranda*. The district court adopted the State's concession and denied the remainder of Becklund's motion, concluding that the officer had reasonable suspicion to detain Becklund and that he was not in custody for purposes of *Miranda* prior to being handcuffed. Becklund entered a conditional guilty plea to possession of a controlled substance, I.C. § 37-2732(c), reserving the right to appeal the partial denial of his motion to suppress. In exchange for Becklund's guilty plea, the State agreed to dismiss the remaining count and the persistent violator sentencing enhancement. Becklund appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

---

[1]     The exact nature of the comments is unknown. The officer's bodycam was not recording audio at this point and, at the suppression hearing, the officer testified that he could not specifically recall what his comments were.

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

### III.

### ANALYSIS

Becklund asserts the district court erred in concluding that the officer had reasonable suspicion to detain Becklund and that, prior to being handcuffed, he was not in custody for purposes of *Miranda*. The State responds that Becklund has failed to show that either of the district court's legal conclusions was erroneous. We affirm and hold that Becklund's detention was supported by reasonable suspicion and that there was no *Miranda* violation prior to Becklund being handcuffed.

### A.      Reasonable Suspicion

An investigative detention is permissible if it is based upon specific, articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). An officer may draw reasonable inferences from the facts in the officer's possession to support reasonable suspicion, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the seizure. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).

The district court concluded that the officer had reasonable suspicion to detain Becklund because the officer: (1) knew, based on his fifteen years of experience patrolling the neighborhood and statistical reports from the police department, that the area had a "high incidence of illicit drug use"; (2) "had personal knowledge of reputed drug activity by" the individual with whom Becklund was interacting; (3) observed Becklund and the other individual "standing very close together in a tighter or guarded orientation with their hands held higher than is normal for persons engaged in casual conversation" and making "furtive movements"; (4) saw that Becklund "was holding what appeared to be a clear or white case"; (5) had "witnessed hand[-]to[-]hand illicit drug

3

transactions on several occasions and was familiar with how such exchanges occur"; (6) believed, based on what he had seen, that Becklund was engaged in a drug transaction; (7) saw that Becklund "walked away at a quicker pace than a normal walking pace" as the officer approached; and (8) was present when Becklund "dump[ed] several syringes out of a bag almost immediately after [the officer] confronted him." Becklund advances several arguments in support of his assertion that the district court erred in its conclusion that the officer had reasonable suspicion.

First, Becklund asserts the district court's finding that the officer noticed "furtive movements" should be "discounted" because it is "contrary to his testimony that [Becklund and the other individual] were just standing together with their hands raised." Becklund also asserts that the officer "did not actually testify to any furtive movements on the part of" Becklund and the other individual. Becklund, however, misinterprets the officer's testimony. At the hearing on the motion to suppress, the officer testified as follows:

> I saw two individuals, two males standing in close proximity which in and of itself--I guess they [were] standing in close proximity with their hands raised, and they were closer than what I would describe as conversational distance and kinda [sic] tighter body language. Overall, I would say it was just more furtive movement.

As is evident from the officer's testimony, the officer considered the individuals' close proximity, raised hands, and "tighter body language" as part of the "furtive movements." Consequently, the officer's testimony does not contradict itself, nor did he fail to articulate what any of the furtive movements were, as Becklund claims.

Second, Becklund contends that the officer's observation of the eyeglass case in Becklund's hand "is of little significance" because the officer "did not testify that he observed [Becklund] open or close the case, and did not articulate why the case itself was significant." What the officer did not observe, however, does not detract from the probative value of what the officer actually observed. As for Becklund's claim that the officer failed to articulate the significance of the case, it is well-settled that an officer's subjective beliefs are irrelevant in determining reasonable suspicion. *See State v. Spies*, 157 Idaho 269, 273, 335 P.3d 609, 613 (Ct. App. 2014). In any event, contrary to Becklund's representation, the officer articulated why the eyeglass case was significant. When asked at the suppression hearing why he was focused on the eyeglass case,

4

the officer replied, "Because that is what I saw in [Becklund's] hand when I believed there to be activity, narcotic activity of some sort." Becklund's argument on this point lacks merit.

Third, Becklund asserts that the district court's finding that he "walked away at a quicker than normal walking pace" was erroneous because the finding "is contradicted by the video evidence, which does not show [Becklund] walking away at a fast pace." We disagree that the bodycam video contradicts the district court's finding. The district court found that, "as [the officer] rode up on [Becklund and the other individual], [Becklund] walked away at a quicker pace than a normal walking pace." The officer's bodycam did not record the initial part of this interaction. Instead, the bodycam video began sometime *after* Becklund disengaged with the other individual. At the suppression hearing, the officer testified that, as he rode up to the pair, Becklund "walked away quickly." This provides substantial evidence for the district court's finding, which is not contradicted by the bodycam video's recording of Becklund sometime after he disengaged with the other individual. Consequently, Becklund has failed to show error in the district court's finding.

Fourth, Becklund argues that, "even if he was walking away quickly, the fact that [he] was hoping not to speak to law enforcement cannot support a finding of reasonable suspicion." In support, Becklund cites two opinions, noting that a person's refusal to speak with officers cannot, by itself, support reasonable suspicion of criminal activity. *See Florida v. Royer*, 460 U.S. 491, 498 (1983) (noting that a person "may not be detained even momentarily without reasonable, objective grounds for doing so; and [the person's] refusal to listen or answer does not, without more, furnish those grounds"); *State v. Gonzales*, 165 Idaho 667, 674, 450 P.3d 315, 322 (2019) (observing that "an individual exercising their right to refuse to speak with law enforcement, on its own, is insufficient to support a finding of reasonable suspicion"). These cases are inapposite. The district court found that Becklund walked away quickly, not that he refused to speak with officers. Evasive action can support suspicion of criminal activity. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *State v. Bonner*, 167 Idaho 88, 95-96, 467 P.3d 452, 459-60 (2020) (concluding that suspect's evasive actions and distancing himself from a vehicle he had been driving gave officer a "reasonable basis for suspecting that illegal conduct was taking place").

5

Thus, the district court properly considered Becklund's quick pace in walking away from the officer.

Fifth, Becklund asserts that this Court "cannot draw much significance from [his] act" of dumping several syringes from a bag when the officer first encountered Becklund because "we do not know what precipitated it." We disagree. Becklund's act of discarding the syringes after the officer observed what appeared to be a drug transaction gave the officer a firm basis for reasonable suspicion of criminal activity regardless of Becklund's reason for discarding them.

Considering the totality of the circumstances, we agree with the district court that the officer had reasonable suspicion to detain Becklund. The officer's observation of the eyeglass case and actions that, in conjunction with his experience, appeared to be a drug transaction taking place in a high-drug-crime area with another person reputed to engaged in drug activity, combined with Becklund's evasive actions in walking away quickly and discarding syringes in response to the officer's comments, provided a sufficient basis for reasonable suspicion of criminal activity. *Cf. Wardlow*, 528 U.S. at 124 (holding that evasive behavior can support reasonable suspicion); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (holding that "a person's mere propinquity to others independently suspected of criminal activity does not, *without more*, give rise to probable cause to search that person") (emphasis added); *State v. Manthei*, 130 Idaho 237, 239, 939 P.2d 556, 558 (1997) (holding that officer's observation of syringe in suspect's pocket and belief, based on training and experience, that the syringe was "possibly dope related" was sufficient for reasonable suspicion), *overruled on other grounds by State v. Maland*, 140 Idaho 817, 103 P.3d 430 (2004); *State v. Holcomb*, 128 Idaho 296, 302, 912 P.2d 664, 670 (Ct. App. 1995) (holding officer had reasonable suspicion based, in part, on suspect being in a vehicle "parked across the street from a tavern that was reportedly a center of drug activity" and observing suspect "engaging in body movements that were consistent with inhalation of drugs"); *Montague*, 114 Idaho at 321, 756 P.2d at 1085 (observing that "an officer may draw reasonable inferences from the facts in his possession, and those inferences may be informed by the officer's experience and law enforcement training"). Thus, Becklund has failed to show that the district court erred in concluding that the officer had reasonable suspicion to detain him.

**B.	Custody for Purposes of *Miranda***

Becklund argues the district court erred in concluding that he was not in custody for purposes of *Miranda* prior to being handcuffed. The State responds that the district court's conclusion is correct. The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda*, 384 U.S. at 478. This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered may include the degree of restraint on the person's freedom of movement (including whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

The district court found: (1) the officer directed Becklund to sit down, but he was not "immediately handcuffed or physically restrained" and there was "no actual use or threat of force"; (2) the "encounter occurred during daylight in a public place with other citizens milling around in the vicinity"; (3) the officer asked some "basic questions to confirm or dissuade himself of what

7

he suspected he had observed" and asked Becklund "whether he had more needles on him; whether he had drugs on him; and what he possessed in the case he had been holding"; (4) the duration of Becklund's detention, prior to being handcuffed, was "approximately 4 minutes and 19 seconds"; (5) a second officer was present but "did not inject herself into the inquiry" and a third officer "showed up at some point" but "was not a significant factor in [the] initial encounter"; (6) the officer who questioned Becklund "was firm but not particularly abrasive or intimidating in [the officer's] conversation with [Becklund]"; and (7) Becklund "did not appear to be forced or coerced into responding to any of the questions." In light of these findings, the district court concluded that Becklund was not in custody for purposes of *Miranda* prior to being handcuffed.

Becklund contends that the officer who initially contacted Becklund "compelled [his] incriminating statements by refusing to accept his repeated denials of possessing illegal drugs." Becklund's assertion, however, is contradicted by the district court's express finding that Becklund "did not appear to be forced or coerced into responding to any of the questions." Becklund has not argued that this finding is not supported by substantial evidence, as he must do to show it was error. *See Atkinson*, 128 Idaho at 561, 916 P.2d at 1286 (noting that an appellate court "defer[s] to the trial court's findings of fact if they are supported by substantial evidence"); *cf. State v. Whiteley*, 124 Idaho 261, 269, 858 P.2d 800, 808 (Ct. App. 1993) (characterizing trial court's implicit determination that officer's representations were not coercive as a "finding"). A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Thus, Becklund has failed to show the district court erred in finding that his responses did not appear coerced. In any event, Becklund admits that the officer's "tone was not threatening." Overall, the officer's conduct in questioning fell well below the threshold for establishing custody for purposes of *Miranda*. *Cf. State v. Andersen*, 164 Idaho 309, 314, 429 P.3d 850, 855 (2018) (concluding that suspect was not in custody for purposes of *Miranda* despite being subject to questioning for "less than one hour," at times by two officers, and being accused of lying by one officer in an aggressive tone). Considering the totality of the circumstances, we hold the district court did not err in concluding that Becklund was not in custody for purposes of *Miranda* prior to being handcuffed.

8

**IV.**

**CONCLUSION**

The district court correctly concluded that the officer had reasonable suspicion to detain Becklund and that he was not in custody for purposes of *Miranda* prior to being handcuffed. Therefore, Becklund has failed to show that the district court erred in partially denying his motion to suppress. Consequently, Becklund's judgment of conviction for possession of a controlled substance is affirmed.

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.